FIRST NATIONAL BANK OF SHAKOPEE and Others v. MARY M. HOW.[2]

May 29, 1895.

Nos. 9390—(100).

**Homestead—Selection by Insolvent.**

The homestead law exempts from execution, as the homestead of the debtor, any quantity of land, not exceeding in amount one-half acre, to be selected by the owner thereof "within the laid-out or platted portion of any incorporated town, city or village having less than five thousand inhabitants, and the dwelling house thereon and its appurtenances owned and occupied" by him.   A debtor owned several adjacent lots, exceeding in area one-half acre, in the laid-out and platted portion of such a city.   A part of this tract was covered by her dwelling house and its appurtenances; another part by a brick store owned by her, and not a part of, or appurtenant to, the dwelling house.   *Held*, in selecting her homestead, she could not reject a part of the dwelling or its appurtenances for the purpose of including in her selection the brick store.

**Same.**

Where more than one-half acre is included in the appurtenances and the land covered by the dwelling house, *held* she could reject a part of the appurtenances for the purpose of selecting another part.   But *held* she must make her selection in a reasonable manner, and cannot carve it out of the front part of a number of platted city lots of the ordinary depth, thereby leaving the rear part of the lots without any means of access except through an alley.

a Reported in 63 N. W. 630.            2 Reported in 63 N. W. 632.

Same.

> *Held,* under the circumstances of this case, it was not error to require the insolvent debtor to include all of the dwelling house in her selection, though a few feet of one wing of the same was on land of which she owns only an undivided one-half.

In the matter of the assignment of Mary M. How, an insolvent debtor, pending in the district court for Scott county, the First National Bank of Shakopee and other creditors filed their petition praying that a certain selection of land made by the insolvent as her homestead be set aside and that the homestead to which she was entitled be ascertained by the court. From an order, Cadwell, J., requiring that the insolvent make a new selection as directed by the court, she appealed. Affirmed.

*H. J. Peck,* for appellant.

*Southworth & Coller* and *Charles G. Hinds,* for respondents.

CANTY, J.[3] Mary M. How made an assignment of all her unexempt property for the benefit of her creditors, under the insolvency law of this state. At the time of the assignment she was the owner of the undivided one-half of lot 1, and the owner of all of lots 2, 3, 4, and the front 102 feet of lot 5, and the buildings on these lots, all as appears by the plat hereto attached:

[3] Buck, J., absent, did not sit.

All of her dwelling house is on lot 2, except a few feet of one wing, which extends over upon lot 1, and a few feet of the other wing, which extends over upon lot 3. Her homestead is, and for many years has been, upon this property. It is in Shakopee, a city of less than 5,000 inhabitants. After the assignment the insolvent selected as her homestead the parts of said lots 2, 3, 4, and 5 south of and included in the dotted line shown on said plat. On the petition of a number of her creditors, her selection was by the order of the court below set aside, and she was ordered to make a new selection. From this order she appeals.

G. S. 1894, § 5521, provides: "A homestead, consisting of any quantity of land not exceeding eighty acres, and the dwelling house thereon and its appurtenances, to be selected by the owner thereof, and not included in the laid-out or platted·portion of any incorporated town, city or village, or, instead thereof, at the option of the owner, a quantity of land not exceeding in amount * * * one-half acre, if within the laid-out or platted portion of any incorporated town, city or village having less than five thousand inhabitants, and the dwelling house thereon and its appurtenances, owned and occupied by any resident of this state, shall not be subject to attachment, levy or sale upon execution," etc. G. S. 1894, §§ 5523, 5524, read as follows: Section 5523: "Whenever a levy shall be made upon the lands or tenements of a householder whose homestead has not been selected or set apart by metes and bounds, such householder shall notify the officer, at the time of making such levy, of what he regards as his homestead, with a description thereof, within the limits above prescribed, and the remainder alone shall be subject to sale under such levy." Section 5524: "If the plaintiff in the execution shall be dissatisfied with the quantity of land selected and set apart by such householder, as aforesaid, the officer making such levy shall cause the same to be surveyed, beginning at a point to be designated by the owner, and set off, in a compact form, including the dwelling house and its appurtenances, the amount specified in the first section of this act; and the expenses of such survey shall be chargeable on the·execution, and collected thereon."

Under said G. S. 1894, § 5521, the insolvent is entitled to carve out of these five lots one-half of an acre as her homestead, but her

selection must include all of the dwelling house and its appurtenances before she can reach out and take in any of the adjoining land which did not actually form a part of the dwelling and its appurtenances at the time of the assignment. Her selection did not conform to this rule. On the east side of lot 5 is a brick store building, which at the time of the assignment was occupied by tenants, and used as a post office, restaurant, millinery store, and physician's office. West of this store, near the west line of lot 5, was a board fence, which separated the appurtenances of the dwelling house from those of this store. She included this store and its appurtenances in her selection, and rejected the rear parts of lots 2, 3, and 4, and the west side of lot 2, all of which were appurtenant to the dwelling house. The west wing of the house, which she attempted to reject, connects with the rest of the house by means of a door through the partition wall, and was used by her as a part of the dwelling house until a week after the assignment, when she took out the furniture, took up the carpet, and delivered possession of the room of this wing to the assignee. The rear of lot 2 was occupied as the back yard of the house, and among other things used on it was a clothes reel. On the rear of lot 3 was the carriage house, barn, a stable, and shed. From these, through the center of the lot, to the street in front, was a driveway. The rear of lot 4 was used to some extent as a barn yard, and other parts of this lot and lot 3 were used as a garden, flower garden, and for other purposes for which premises appurtenant to a dwelling house are ordinarily used.

Under these circumstances, all of the parts of lots 2, 3, and 4 so rejected were clearly appurtenant to the dwelling house, and none of these parts could be rejected for the purpose of including in the selection the brick store which was no part of the appurtenances of the dwelling. If more than one-half acre is included in the appurtenances and the land covered by the dwelling house, the debtor has a right, subject to the rule hereinafter stated, to reject one part of the appurtenances for the purpose of selecting another part, but he cannot reject a part of the dwelling or its appurtenances for the purpose of including in his selection land not included in or covered by these. But we will go further. The selection of the debtor must be made in a reasonable manner. He cannot carve

his selection out of the front part of a number of platted city lots of ordinary and usual depth, when it will leave the rear of these lots without any reasonable or proper access.    In the present case the attempted selection would leave the rear portions of lots 2, 3, and 4 without any means of access except through an alley.    The statute never contemplated any such a manner of selecting a homestead.    In cases of this character there are many matters of detail, as to which each case must depend on its own circumstances.

Our conclusion is that in this case the court below did not err in holding that the insolvent must select all of the dwelling house. But, as she has only an undivided one-half interest in lot 1, we are of the opinion that, under all the circumstances, she may, if she sees fit, select no part of that lot except that which is actually covered by such dwelling.

This disposes of all the questions in the case, and the order appealed from is affirmed.

